UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROBBIN L. LOLOGO and VINCENT J. LOLOGO,

    Plaintiffs,

vs.

WAL-MART STORES, INC. d/b/a WAL-MART SUPERCENTER STORE #1834; and ADVANTAGE SALES & MARKETING LLC,

    Defendants.

Case No.: 2:13-cv-1493-GMN-PAL

**ORDER**

Pending before the Court is the Motion for Summary Judgment (ECF No. 63) filed by Defendant Advantage Sales & Marketing LLC ("ASM"). Plaintiffs Robbin L. Lologo and Vincent J. Lologo ("Plaintiffs") filed a Response (ECF No. 64), as did Cross-Claimant Wal-Mart Stores, Inc. ("Wal-Mart"), (ECF No. 65). ASM filed a Reply to Plaintiffs' Response (ECF No. 66) and a Reply to Wal-Mart's Response (ECF No. 67). For the reasons discussed below, ASM's Motion is **GRANTED in part and DENIED in part**.

I.     <u>BACKGROUND</u>

This case arises out of a slip and fall that occurred at Wal-Mart Store #1834, a Wal-Mart Supercenter Store in Grants Pass, Oregon (the "Wal-Mart Store"). (Am. Compl. ¶ 9, ECF No. 57). On August 7, 2011, Plaintiffs were shopping in the Wal-Mart Store and, while approaching a checkout line, Ms. Lologo allegedly slipped and fell on a brownish-yellow substance that was on the floor. (*Id.*); (Pls.' Resp. 4:4–5). A witness later identified the substance as applesauce. (Pls.' Resp. 4:4–5); (Depo. of Kira Sidivy p. 33, ECF No. 65-4).

ASM and Wal-Mart had an "In Store Promotions Agreement" ("the Agreement") in effect on the date of the incident. The Agreement included, among other things, an

indemnification clause requiring that ASM indemnify Wal-Mart:

> against any, and all, Claim(s) arising out of or relating to any of the following circumstance which arise under this Agreement: (i) breach of any of its obligations, representations, warranties, or covenants made under this Agreement; (ii) negligent acts or omissions by ASM or its personnel, employees, agents, or representatives in the course of performing under this Agreement.

(MSJ 5:14–24, ECF No. 63); (Agreement § 17(c), ECF No. 63-11).  ASM also had an obligation under the Agreement to "maintain the areas surrounding the Promotional Event in a neat and clean condition." (Agreement § 2(j)).  Although the parties dispute the precise location where ASM's promotional event took place, the parties agree that ASM distributed applesauce in the Wal-Mart Store on August 7th. (MSJ 11:4–6).

Plaintiffs filed the instant action in state court on July 12, 2013. (Ex. B to Pet. for Removal, ECF No. 1).  Wal-Mart removed the case to this Court on August 20, 2013. (ECF No. 1).  Plaintiffs amended their Complaint to add ASM as a Defendant on July 22, 2014. (ECF No. 57).  On August 1, 2014, Wal-Mart filed a Cross-Complaint containing four claims against ASM. (ECF No. 59).  In the instant Motion, ASM requests that the Court enter summary judgment as to all claims against it. (ECF No. 63).

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

In considering the instant Motion, the Court will first address ASM's arguments as to Plaintiff's claims, and will then address the arguments regarding Wal-Mart's cross-claims.

### *A.  Plaintiffs' Claims*

ASM argues summary judgment is warranted as to Plaintiffs' (i) negligence claim, (ii) negligent hiring and supervision claim, and (iii) loss of consortium claim. The Court will analyze each claim in turn.

#### *i.  Negligence*

"To recover under a negligence theory, [a plaintiff] must prove four elements: (1) that [the defendant] owed him a duty of care; (2) that [the defendant] breached this duty of care; (3) that the breach was the legal cause of [the plaintiff's] injury; and (4) that the complainant suffered damages." *Hammerstein v. Jean Dev. W.*, 907 P.2d 975, 977 (Nev. 1995).

Plaintiffs argue that both Wal-Mart and ASM had a duty to maintain the Wal-Mart Store "in such a manner as to provide a safe environment for their invited guests." (Am. Compl. ¶ 10, ECF No. 57). ASM argues that it had no duty under premises liability to Plaintiffs. (MSJ 15:9–13). According to Nevada law, a defendant can be held liable for negligence under the theory

of premises liability only when the defendant is the *owner* or *occupier* of a piece of land. *See, e.g.*, *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1182 (Nev. 1996). However, the only relevant question to this case is whether ASM can be held liable as an occupier, as it is undisputed that the land at issue was owned by Wal-Mart, (MSJ 15:9–13).

ASM argues that it was not an occupier of the land because it did not have control over the area where the events occurred. (*Id.* at 16:17–17:3). Pursuant to the Agreement, ASM argues it had a duty to maintain only the area around its promotional event and was not permitted in any other area. (*Id.* at 16:17–17:3); (Agreement § 2(j), ECF No. 63-11). ASM claims the promotional event area was roughly forty-five feet away from where the incident occurred. (MSJ at p. 10, Figure 2).

A negligence claim cannot arise directly from a breach of contract. *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract."). However, though the question is not resolved under Nevada law, courts in numerous other states have held that a contract may grant a licensee sufficient control over an area to establish a duty of care. *See, e.g.*, *Oregon-Washington R. & Nav. Co. v. Branham*, 259 F. 555, 556 (9th Cir. 1919) ("[A]s it was clear that [the defendant] was an independent contractor, it cannot avoid liability for injuries sustained to a third person, where such injuries have been inflicted because of conditions brought about by its negligent action."); *Felix v. GMS Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 436 (E.D. Pa. 2011) *aff'd*, 501 F. App'x 131 (3d Cir. 2012) (holding that, under Pennsylvania law, independent contractors owe a duty of reasonable care to invitees and may be held liable in negligence for causing hazardous conditions); *Stevenson v. Saratoga Performing Arts Ctr., Inc.*, 981 N.Y.S.2d 877, 879 (2014) ("[A] licensee exercising control owed a duty to those on the property to maintain the premises in a reasonably safe condition

during the period of its use.").

Here, the Agreement permitted ASM to use a portion of the Wal-Mart Store as a licensee, and ASM acknowledges it had a duty under the Agreement to maintain the area around its promotional event. (MSJ 16:21–22, ECF No. 63). Therefore, it is clear that ASM, pursuant to the terms of the Agreement, had a duty not to create hazardous conditions in the area of the promotional event that could injure Wal-Mart's invitees.

However, the parties dispute *where* the promotional event took place within the Wal-Mart Store. ASM argues, in accordance with report of its expert, Dustin Holmes, that the promotional event was located near the customer service area, beyond the point of sale and a minimum of forty feet away from where Ms. Lologo slipped and fell. (*Id.* at 16:22–23); (Report of Dustin Holmes at p. 4, ECF No. 63-9). Wal-Mart argues that according to the assignment review sheet produced by ASM, the promotional event occurred in "Action Alley" which is the same area where Ms. Lologo slipped and fell. (Assignment Review, ECF No. 65-9); (Wal-Mart's Resp. 19:12–15). Therefore, a genuine issue of material fact exists as to where ASM's promotional event was located in the Wal-Mart Store, which underlies the question as to whether ASM breached its duty to Plaintiffs. Accordingly, ASM's motion for summary judgment will be denied as to Plaintiffs' negligence claim.

    ii. *Negligent Hiring and Supervision Claim*

Plaintiffs claim that that ASM had a duty to adequately train and supervise its employees, which necessarily would include training regarding proper cleaning procedures. (Am. Compl. ¶ 18, ECF No. 57). Plaintiffs claim ASM breached its duty to adequately train and supervise its employees by not ensuring the area surrounding the promotional event was clean and free of hazards. (*Id.* at ¶ 19). ASM argues that Plaintiffs have failed to provide any evidence to support this claim. (MSJ 18:17–22, ECF No. 63). Indeed, rather than providing evidence to support their allegations, Plaintiffs merely put forward a generic request for more

time to conduct discovery. (Pls.' Response 5:1–4, ECF No. 64).

Plaintiffs had nearly seven weeks after ASM filed its Answer to conduct discovery and nearly six months after ASM filed the instant Motion to file a motion to extend discovery. Notably, Plaintiffs have not filed such a motion, nor do they specify what evidence they intend to seek if given more time to conduct discovery. Because Plaintiffs have not presented any evidence demonstrating that ASM breached its duty to supervise and train its employees, and have failed to demonstrate any likelihood that they will ascertain such evidence if additional discovery is granted, no genuine issue of material fact exists. Accordingly, ASM's Motion for Summary Judgment will be granted as to this claim.

### iii.  *Loss of Consortium Claim*

Mr. Lologo claims that, as a result of ASM's negligence, he suffered a loss of "spousal society, services, and consortium." (Am. Compl. ¶ 27). ASM claims that Mr. Lologo cannot recover for loss of consortium because it is not liable for Ms. Lologo's injuries. (MSJ 14:19–25, ECF No. 63). Because the Court, as discussed previously, will deny ASM's Motion for Summary Judgment as to Ms. Lologo's negligence claim, the Court will also deny the Motion as to Mr. Lologo's loss of consortium claim.

### B.  *Wal-Mart's Cross-claims*

ASM claims summary judgment is warranted for Wal-Mart's (i) contractual indemnity claim, (ii) equitable indemnity claim, (iii) contribution claim, and (iv) breach of contract claim. The Court will analyze each claim in turn.

### i.  *Contractual Indemnity*

Wal-Mart claims that, pursuant to the Agreement, ASM "is legally obligated to defend and indemnify Walmart for any and all claims arising out of [Plaintiffs'] lawsuit." (Cross-Compl. 11:3–4, ECF No. 59). Specifically, Wal-Mart argues that ASM has a duty to indemnify it against claims arising out of or relating to: "(i) breach of any of [ASM's] obligations,

1  representations, warranties, or covenants made under this Agreement; (ii) negligent acts or
2  omissions by ASM or its personnel, employees, agents, or representatives in the course of
3  performing under this Agreement." (Agreement § 17(c), ECF No. 63-11).

4    As discussed above, because a question of fact exists as to how far the promotional
5  event was from the location of Ms. Lologo's fall, a genuine dispute of material fact exists as to
6  whether ASM breached an obligation under the Agreement or negligently caused Ms. Lologo's
7  injuries. Accordingly, ASM's Motion is denied as to Wal-Mart's contractual indemnity claim.

8      *ii.   Equitable Indemnity Claim*

9    Wal-Mart additionally claims equitable indemnity against ASM in its Cross-Complaint.
10  (Cross-Compl. 11:12–24). ASM argues that a claim for equitable indemnity cannot exist
11  where, as here, parties have contemplated and executed a valid indemnification agreement.
12  (MSJ 20:6–11, ECF No. 63). In its Response, Wal-Mart states that because ASM has conceded
13  that a valid indemnification agreement exists, ASM is estopped from later disputing the validity
14  of the indemnification clause. (Wal-Mart's Resp. 23:11–20, ECF No. 65).

15    "When the duty to indemnify arises from contractual language, it generally is not subject
16  to equitable considerations; rather, it is enforced in accordance with the terms of the contracting
17  parties' agreement." *Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev. Co.*, 255 P.3d
18  268, 274 (Nev. 2011); *see also F.D.I.C. v. Nevada Title Co.*, No. 2:13-CV-00606-GMN, 2014
19  WL 4798523, at *4 (D. Nev. Sept. 25, 2014) ("The Supreme Court of Nevada has held that
20  implied indemnity theories are not viable in the face of express indemnity agreements."
21  (internal quotation omitted)). Because it is undisputed that a valid indemnification agreement
22  exists between ASM and Wal-Mart, ASM's Motion will be granted as to the equitable
23  indemnity claim.

24      *iii.   Contribution Claim*

25    Wal-Mart claims that, in the event that it and ASM are both found liable under

negligence and Wal-Mart satisfies more than its share of the liability, ASM should be held liable to Wal-Mart for the damages attributable to ASM's negligence. (Cross-Compl. 12:13–20, ECF No. 59).  ASM argues that Wal-Mart's contribution claim should also be dismissed because ASM believes that it did not owe a duty to Plaintiffs. (MSJ 19:9–13, ECF No. 63). However, as discussed above, depending on where the promotional event was located, ASM may have breached its duty to maintain the area over which it asserted control.  Accordingly, ASM's Motion for Summary Judgment will be denied as to Wal-Mart's contribution claim.

        *iv.*    **Breach of Contract Claim**

Wal-Mart argues that ASM breached its contractual duties by failing to defend Wal-Mart from Plaintiffs' claims. (Cross-Compl. 13:10–11, ECF No. 59).  As stated above, under the Agreement, ASM has a duty to defend Wal-Mart against all claims that arise out of either a breach of ASM's contractual duties or ASM's negligence. (Wal-Mart's Resp. 5:14–24, ECF No. 65).  However, the question as to whether ASM acted negligently or breached its contractual duties depends, again, on the location of the promotional event in relation to the site of Ms. Lologo's fall.  Therefore, as a genuine dispute of material fact exists as to where the promotional event took place, ASM's Motion for Summary Judgment will be denied as to the breach of contract claim.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Advantage Sales & Marketing's Motion for Summary Judgment, (ECF No. 63), is **GRANTED in part and DENIED in part,** pursuant to the foregoing.

**DATED** this 27th day of April, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court